**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT P. MAHER and MARILYN V. MAHER, individuals, ) ) ) Plaintiffs, ) ) v. ) ) ) THE ROWEN GROUP, INC., d/b/a ) PLAYROOM ENTERTAINMENT, a ) California corporation; and DANIEL M. J. ) ROWEN, an individual, ) ) Defendants. ) | Case No. 12-cv-07169<br><br>Honorable Marvin E. Aspen<br><br>Magistrate Judge Arlander Keys |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs, Robert P. Maher and Marilyn V. Maher (collectively, the "Mahers"), by and through their attorneys, submit the following as their memorandum of law in support of Plaintiffs' Motion for Partial Summary Judgment.

**INTRODUCTION**

The Mahers seek a money judgment against Defendants, The Rowen Group, Inc. d/b/a Playroom Entertainment ("Playroom") and Daniel M.J. Rowen ("Rowen") for defaults under the Loan made by the Mahers to Defendant Playroom which in turn was personally guaranteed by Rowen and an award of attorneys' fees and costs pursuant to the contractual obligations of Defendants under the Loan Agreement and under the Unconditional Guaranty. Also, the Mahers seek a judgment dismissing Counts III and IV of Defendants' Amended Counterclaim.

**UNDISPUTED FACTS**

Playroom is in the business of printing (publishing) and distributing for resale, board and other games pursuant to licenses that it holds with creators of the games. MF[1] at ¶ 7. In early 2011, Rowen approached Robert Maher, Sr. seeking a loan of up to $500,000 to Playroom. MF at ¶¶ 9,11. The purpose of the loan was to provide funds to pay off existing Playroom debts and obligations. MF at ¶ 9. Rowen said that after those obligations were paid, Playroom would be able to pay its current obligations as they came due and service the Maher debt from then current operating revenues. MF at ¶ 9. The Mahers agreed to make the Loan on the terms set forth in the Loan Documents which have an effective date June 30, 2011. MF at ¶¶ 11-16. Even before the Loan Documents were executed, at the urgent request of Rowen, the Mahers advanced Playroom $75,000 under the Loan. Thereafter, a total of $435,000 were advanced under the Loan Documents to Playroom prior to March 31, 2012. MF at ¶ 17. After the Loan Documents were signed, Playroom took the rest of 2011 to get its financial statements in order and on to the MAS 500 computer accounting program. MF at ¶ 33. Both the Mahers and Rowen have access to Playroom's financial statements on the MAS 500 system but essentially all journal entries for Playroom's financial transactions are made by Playroom's in-house accountant. MF at ¶ 33.

Because of travels in early 2012, Robert Maher did not have an opportunity to review Playroom's financial records until late February 2012. At that time he saw that the $435,000 already advanced under the Loan had not been used as agreed to pay off the prior obligations of Playroom. Over the course of the following months, Robert Maher discovered that Playroom's accounting records and financial statements were not being kept in accordance with GAAP (generally accepted accounting principles) as required under the Loan Documents. MF at ¶ 35. As detailed in Robert Maher's Affidavit, Playroom has failed to accrue its expenses, failed to

---

[1] References to "MF at ¶ __" refer to specific paragraphs in Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts.

timely post its expenses, improperly lumped expenses in incorrect accounts, and made improper prior period adjustments. MF at ¶ 36.

Robert Maher also discovered that Rowen made the first and every subsequent scheduled payment on the Loan with borrowed funds when the Loan Documents specifically stated it was a default for Playroom to borrow money without the consent of the Mahers, which consent was never requested and never given. MF at ¶¶ 50-56.

Additionally, by reason of its failure to pay license fees and royalties and to pay for the printing of games, Playroom has lost the US licenses issue to it by Schmidt Spiele, a large German game publisher, for some of Playroom's better selling games. MF at ¶¶ 28-31. Although Playroom agreed in the Loan Documents to pay its obligations as they come due, it has failed to fulfill that obligation on many occasions including Playroom's failure to pay obligations to vendors, to pay tax penalties assessed by the IRS, and even to pay agreed amounts under agreements to settle litigation brought against Playroom. MF at ¶¶ 23-31, 48-49, 60-62. Under the Loan Documents, Playroom also agreed to file its tax returns on a timely basis but has intentionally failed to met that obligation as tax returns for 2011 and 2012 which are long past due have not been filed by Playroom. MF at ¶ 65.

The foregoing is just a summary of the numerous and ongoing defaults by Playroom under the Loan Documents. Notice of these defaults and others were served on Playroom and Rowen but they were never cured. MF at ¶ 21. The Mahers therefore accelerated the payment of the indebtedness. MF at ¶ 21. Playroom has failed to pay the accelerated indebtedness and Rowen, who agreed under his Unconditional Guaranty to perform all of Playroom's obligations including payment of the Loan, has failed to make the required payment. MF at ¶ 48. Based on this undisputed litany of facts the Mahers are entitled to summary judgment on Counts I and II of their Complaint.

3

The Mahers are also entitled to summary judgment dismissing the remaining counts of Defendants' Counterclaim. Defendants claim breach of contract against the Mahers because the last $65,000 of the Loan was not disbursed by the Mahers. However, the Mahers were excused from making that last disbursement because Playroom was in a "Possible Default" situation in April 2012 and Robert Maher served a notice to that effect as provided for in the Loan Documents. MF at ¶ 20. As explained above and hereinafter in April 2012 there was ample evidence to support such a notice. After such a notice was served on Defendants under the Loan Documents, the Mahers were relieved of any obligation to make further advances. MF at ¶ 69. In Count IV of the Counterclaim, Defendants allege that the Mahers induced their son, Robert Maher, Jr., to cause his company, ACD Distribution, to breach the Exclusive Distribution Agreement between ACD Distribution and Playroom. As set forth in the evidence offered with this Motion, the Mahers deny they induced or attempted to induce their son or anyone else to cause ACD Distribution to breach any contract it had with Playroom. MF at ¶ 76. Additionally, Defendants have no admissible evidence which if offered and believed by the trier of fact could possible lead a reasonable person to conclude that ACD Distribution breached any contract with Playroom or that the Mahers induced their son or anyone else to cause such a breach. MF at ¶¶ 76-80. Without evidence of a breach and without evidence of any inducement by the Mahers, Count IV must be dismissed with prejudice.

## ANALYSIS

### Count I - Breach of Contract

Count I of the Mahers' Complaint is a breach of contract claim against Playroom. To prevail in a breach of contract action, a plaintiff must prove the four elements of its claim: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) damages resulting from the breach. *Lindy Lu LLC v. Illinois Cent. R. Co.,* 984

4

N.E.2d 1171, 1175 (2013). Upon the moving party meeting its burden of production in a motion for summary judgment, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574 (1986). At that stage, FED. R. CIV. P. 56 "requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. In order for an issue to be genuinely in dispute, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The parties acknowledge the existence of the contract which was embodied in the Loan Agreement and the other Loan Documents. MF at ¶¶ 11-16. Second, "a party pleading a cause of action for breach of contract must show its own performance under the contract or an excuse for nonperformance." *Pavey Envelope and Tag Corp. v. Diamond Envelope Corp.,* 648 N.E.2d 1115, 1119 (1995). The Mahers performed under their obligations by disbursing $435,000.00 under the Loan Agreement until they were excused from further performance under its terms. MF at ¶¶ 17, 20, 69. Pursuant to the terms of the Loan Agreement, the Mahers were excused from making any further advances upon the occurrence of any Possible Default. MF at ¶ 69. Playroom's defaults under the contract are fully set forth below. Under the terms of the Loan, those defaults, or any of them, excused the Maher's from having to make any further advances of loan funds. MF at ¶ 69. Further, the Mahers have suffered damages resulting from the Defendants' breaches under the Loan Documents. MF at ¶18. The Mahers accelerated the amount owed by Playroom under the Loan Agreement on August 20, 2012. MF at ¶ 21. Despite the acceleration of the indebtedness, the Mahers are owed $265,693.24 as to the principal balance of the Loan in addition to interest which continues to accrue with the Note. MF at ¶ 18. Further, the Mahers are entitled to recover from Defendants the attorneys' fees and costs they

5

have incurred in their efforts to collect the amounts owed by Playroom. MF at ¶ 18. The Mahers request leave to file a petition for an award of attorneys' fees and costs after the determination of their motion for partial summary judgment.

Lastly, Playroom and Rowen breached the contract by defaulting under a plethora of provisions contained in the Loan Agreement. In particular, defaults occurred and continue under Sections 8.3, 8.4, 8.6, and 8.7 of the Loan Agreement.

## A. Defendants' Defaults Under Section 8.3 of the Loan Agreement.

Under Section 8.3 of the Loan Agreement, Defendants' violation or failure to perform or observe any covenant, agreement, condition or provision contained in the Loan Agreement constitutes an Event of Default. MF at ¶ 22. The Defendants defaulted under Section 8.3 of the Loan Agreement in that Playroom as Borrower defaulted on numerous covenants including those contained in Sections 5.1, 5.2, 5.5, 6.2, 7.2 and 7.4.

### 1. Defendants failed to timely pay ordinary course obligations.

Section 5.1 of the Loan Agreement requires Playroom to timely pay ordinary course obligations including taxes, debts, obligations and liabilities. MF at ¶ 23. First, Playroom failed to timely file Playroom's tax returns for years 2008 through 2010 which resulted in the incursion of tax penalties. MF at ¶¶ 59, 60. As of December 16, 2013, Playroom's tax penalty owed to the IRS remained $10,503.00 and unpaid. MF at ¶ 62. Further, Playroom has not contested the amount owed to the IRS by way of legal proceedings nor has it posted a bond staying execution or enforcement of amounts owed to the IRS as required under the Loan Agreement. MF at ¶ 63.

Second, Defendants are unable to pay their debts and obligations as they come due as evidenced by Playroom's Accounts Payable Aged Payables Reports. On September 5, 2012, Playroom had liabilities aged over 120 days totaling $232,677.07. MF at ¶ 24. On December 16, 2013, Playroom's liabilities aged over 120 days jumped to $307,134.04. MF at ¶ 26.

6

Third, Playroom's inability to pay ordinary course obligations is further evidenced by its inability to pay license fees and commissions. At the time the Loan Documents were executed, Playroom had licenses to produce games owned by Schmidt Spiele. MF at ¶ 28. Playroom no longer produces games owned by Schmidt Spiele. MF at ¶ 29. This is due in part to Playroom's inability to provide Schmidt Spiele with funds for a production run in 2012 as well as falling behind on timely payment of contractually imposed royalties and license fees. MF at ¶ 30.

Additionally, as will be discussed in sub-section (A)(3). Playroom was sued by Triways, one of its vendors, and as a result of that lawsuit Playroom is obligated to make scheduled payments totaling $29,177.42. MF at ¶ 43. According to Rowen, Playroom has taken "a break from making payments…because of other obligations" that Playroom has. MF at ¶ 47. This is another example of the failure of Playroom to meet its financial obligations as they come due.

2. **Defendants failed to keep financial records accurately and in accordance with GAAP.**

Section 5.2 of the Loan Agreement requires Defendants to use their "best efforts to keep true and complete financial records and, by October 31, 2011, to keep such financial records in accordance with GAAP." MF at ¶ 32. Yet, Playroom's financial statements are not being maintained in accordance with GAAP. MF at ¶ 35. Playroom's financial statements are not maintained in accordance with GAAP in that, among other things, Playroom's accounting records are not updated timely or accurately, prior period adjustments are not booked properly, and expenses are not charged properly. MF at ¶ 36.

3. **Defendants failed to notify the Mahers of the institution of lawsuits and their agreement to a judicial judgment in excess of $25,000.00.**

Section 5.5 requires Defendants to notify the Mahers in writing within five days of the occurrence of, among other things, "the institution of, or adverse determination in, any litigation." MF at ¶ 38. Rowen has admitted that after the Loan Documents were executed,

7

Mark Palmer brought litigation against the Defendants in May 2012. MF at ¶ 41. Rowen also admits that he did not give the Mahers written notice of the Mark Palmer litigation, which was not resolved as of June 21, 2013. MF at ¶ 42. Additionally, litigation involving Defendants and Triways which commenced on March 17, 2011 was resolved after the execution of the Loan Agreement resulting in Defendants being required to pay $29,177.42. MF at ¶ 43. The agreement entered into between Triways and Defendants contains a provision for the entry of a stipulated judgment in favor of Triways and against Playroom in the amount of $29,177.42. MF at ¶ 46. Further, while Playroom agreed to make monthly payments under the terms of the agreement, it has taken "a break from making payments . . . because of other obligations" it had. MF at ¶ 48. Defendants are thus in default under Section 5.1 of the Loan Agreement. MF at ¶ 49.

### 4. Defendants incurred additional debt to make payments to the Mahers in violation of the contract.

Section 6.2 declares that "Borrower shall not, without Lender's prior written consent, incur any additional debt." MF at ¶ 50. The first payment of the Loan was due at the end of March 2012. MF at ¶ 51. Rowen loaned Playroom amounts from his personal funds to make the first loan payment to the Mahers without the prior written consent from the Mahers. MF at ¶¶ 52-55. Seven additional payments have been made by Playroom on the Maher loan. In each case, the payment was made as a result of additional cash being deposited into Playrooms financial accounts. MF at ¶ 51. None of these additional funds have been listed on contributions to capital by Mr. Rowen or anyone else, therefore, they must be treated as loans to Playroom for accounting purposes. MF at ¶ 55. Playroom incurring additional debt from Rowen is an unequivocal violation of Section 6.2 of the Loan Agreement. MF at ¶ 50.

### 5. Playroom failed to timely file tax returns.

Playroom warranted that all of its federal, state and local tax returns would be timely filed and to pay all taxes required to be paid therewith. MF at ¶¶ 57-58. Playroom's federal income

8

tax returns for the calendar years 2011 and 2012 are past due and have not yet been filed. MF at ¶ 65. Thus, Playroom is in violation of its obligations under section 7 and in particular section 7.3 and that in turn constitutes a violation of section 8.5 of the Loan Agreement. MF at ¶¶ 11, 57.

**B.    Defendants' defaults under Section 8.4 of the Loan Agreement.**

Section 8.4 of the Loan Agreement states that an Event of Default occurs if Borrower "shall fail to pay or perform any other obligation it may have or be such to within respect to any Party within any applicable grace period that shall materially adversely affect Borrower's financial condition." MF at ¶ 66. Borrower is in default under Section 8.4 because of Borrower's failure to pay its obligations as they come due in the ordinary course, as set forth in detail in section (A)(1) above, each of which materially adversely affects Borrower's financial condition. For instance, Playroom's inability to pay those obligations created lost opportunities to raise revenue and produce games to which it owns the license. Further, Playroom's failure to timely file its taxes resulted in a monetary penalty which inherently adversely affects its financial condition.

**C.    Defendants' defaults under Section 8.6 of the Loan Agreement.**

Section 8.6 states that an Event of Default occurs when "a final judgment or judgments for the payment of money in excess of the sum of $25,000.00 . . . shall be rendered against Borrower or Guarantor" and such judgments are not satisfied or discharged within 30 days. MF at ¶ 67. As set forth above, the resolution of the litigation resulted in Playroom being required to pay Triways $29,177.42. MF at ¶ 43. The agreement with Triways containing a provision for the entry of a stipulated judgment in favor of Triways and against Playroom was executed on November 2, 2011. MF at ¶ 46. The existence of Defendants' agreement with Triways which has not been satisfied is an Event of Default under the Loan Agreement. MF at ¶ 67.

### D. Defendants' defaults under Section 8.7 of the Loan Agreement.

Under Section 8.7(g), the Defendants' failure to pay their debts "as they become due, unless such debt is disputed and Lender has received written notice of such dispute," is an Event of Default under the Loan Agreement. MF at ¶ 68. First, Defendants are unable to pay their obligations as they come due, as set forth in detail in section (A)(1) above. Moreover, the Mahers have not received written notice of any dispute Playroom has with the amount of the tax penalty incurred by the IRS. MF at ¶ 64. Likewise, the Mahers have not received written notice of any dispute Playroom has with any amounts owed as listed on Playroom's Accounts Payable Aged Payables Reports. MF at ¶¶ 24, 26. Finally, Rowen admits that he has been unable to make the required monthly payments as set forth in the settlement agreement with Triways. MF at ¶¶ 48, 49. Thus, Playroom is also in default under Section 8.7 of the Loan Agreement.

Playroom is also in default under Section 8.7(d) in that it is clearly insolvent. MF at ¶ 70. Illinois courts have defined insolvency as occurring when a debtor has insufficient accessible assets to pay its outstanding claim obligations. *See People ex rel. Shapo v. Agora Syndicate, Inc.*, 323 Ill. App. 3d 543, 550 (1st Dist. 2001) (finding that defendant was insolvent from a cash flow standpoint because defendant had insufficient accessible assets to pay its outstanding obligations). Playroom is insolvent now and has been since before this litigation commenced in September 2012. MF at ¶ 71.

### E. Defendants' Defaults are Material.

The defaults discussed in the foregoing sections are material for a number of reasons. A company like Playroom that is operating at a loss and cannot meet its obligations as they come due is insolvent and financially unable to replace the inventory as it is sold. MF at ¶ 73. Thus, as the Playroom continues to operate, its inventory (*i.e.*, security for the Loan) declines. In this case the inventory value has dropped from $614,963.29 to $331,542.80. MF at ¶ 72.

Furthermore, Playroom has lost valuable licenses for its failure to pay in a timely fashion fees and related costs. MF at ¶¶ 28-31. The licenses that are now lost had been pledged as collateral for the Loan and the loss of licenses has diminished the value of that part of the Mahers' collateral. Failure to file tax returns subjects Playroom to penalties and ultimately may result in levies by the IRS which in turn may have priority over the security interests of the Mahers. The refusal of Playroom to keep its financial records in accordance with GAAP is another material default. Playroom is a closely held company; results of its financial operations are not made public. The Mahers have to rely on the agreement of Defendants to keep Playroom's records in accordance with GAAP to know what is going on with the performance of the company and whether it is in compliance with the covenants, representations, and warranties it made in the Loan Documents. When GAAP is not followed, all kinds of mischief can occur as demonstrated by the disappearance of Playroom's apparent $44,000 of net operating income that existed on the company's books as of August 31, 2013 but entirely disappeared in September 2013, even though Playroom's records show that it made an <u>additional</u> $14,000 in September 2013. Defendants failure to abide by the clear, standard requirements in Loan Documents constitute material defaults entitling the Mahers to judgment on Counts I and II of their Complaint.

### Count II — Breach of Guaranty

Count II of the Mahers' Complaint is a breach of guaranty claim against Rowen. To establish a *prima facie* case for enforcement of a guaranty under Illinois law, plaintiff must "enter proof of the original indebtedness, the debtor's default, and the guaranty." *General Elec. Business Financial Services, Inc. v. Silverman*, 693 F.Supp.2d 796, 799 (N.D. Ill. 2010). The Loan Documents establish the original indebtedness taken on by Playroom. MF at ¶¶ 11-16. As of January 28, 2014, Playroom's indebtedness to the Mahers totals $265,693.24, plus interest and

attorneys' fees and costs. MF at ¶ 18. Further, as established *supra*, Playroom is in default under numerous sections of the Loan Agreement. Finally, Rowen executed the Unconditional Guaranty Agreement on June 30, 2011 to further secure the payment of the Loan from the Mahers to Playroom. MF at ¶ 14. Rowen has been given notice of the various defaults. MF at ¶ 21. Nevertheless, Rowen has not fulfilled his obligation to make payment to the Mahers. MF at ¶ 18. The Mahers have suffered damages resulting from Rowen's breach of the Unconditional Guaranty Agreement and his failure to pay the indebtedness due under the Note which sums have been fully accelerated by virtue of the events of default under the Loan Agreement and other Loan Documents. As previously noted, the Mahers are owed $265,693.24 as the principal balance of the Loan in addition to interest which continues to accrue with the Note. MF at ¶ 18. Additionally, the Mahers have incurred substantial attorneys' fees and costs in their attempts to collect the amounts owed by Rowen by virtue of his breach of the Unconditional Guaranty Agreement. MF at ¶ 18. The Mahers are therefore entitled to summary judgment on Count II for Rowen's breach of his guaranty.

**The Mahers Are Entitled to Summary Judgment on
Counts III and IV of Defendants' Amended Counterclaim**

Defendants filed an Amended Counterclaim [Docket #26] and two counts survived the Mahers' motion to dismiss [Docket #35]. *See* Court's Minute Order dated April 22, 2013 [Docket #86]. The Mahers are nevertheless entitled to summary judgment on Counts III and IV of Defendants' Amended Counterclaim.

Count III of Defendants' Amended Counterclaim is a breach of contract action against the Mahers, alleging that the Mahers failed to perform all of their obligations under the Loan Agreement in that they failed to pay Playroom the remaining installment of $65,000.00 due under the Loan Agreement. Defendants must prove all four elements of a breach of contract action to prevail against the Mahers. *See Lindy Lu LLC*, 984 N.E.2d at 1175. If the nonmoving

party fails to establish the existence of an element essential to his case, one on which he bears the burden of proof, summary judgment in favor of the moving party is proper. *Celotex Corp.*, 477 U.S. at 322.

The Mahers are entitled to summary judgment on Count III for two reasons. First, no genuine issue of material fact exists, established *supra*, regarding Defendants' failure to perform under the terms of the Loan Agreement by virtue of Defendants default under numerous provisions of the Loan Agreement. Second, the Mahers did not breach the Loan Agreement because, under its terms, they were excused from making any further advances under the Loan upon the occurrence of any Possible Default. MF at ¶¶ 20, 69. Robert Maher, Sr. provided notice to Rowen regarding its "Possible Default" under the terms of the Loan Documents in April 2012. MF at ¶ 20. Because of Playroom's "Possible Defaults" (which turned out to be actual defaults), the Mahers were permitted under the Loan Agreement to refuse to make any further advances of the Loan Amount. MF at ¶ 69. Thus, as a matter of law, the Mahers did not breach the Loan Agreement and are entitled to summary judgment on Count III of Defendants' Amended Counterclaim.

Count IV of Defendants' Amended Counterclaim is a claim for tortious interference with contractual relations against the Mahers. The Defendants allege that the Mahers intentionally and unjustifiably induced ACD to breach its Exclusive Distribution Agreement by convincing their son, the President of ACD, Bob Maher Jr. ("Bob Jr."), to intentionally not sell Playroom's products. [Docket #33 at ¶ 72] Defendants further allege that ACD did in fact intentionally stop selling Playroom's products, thereby breaching its Exclusive Distribution Agreement with Playroom. [Docket #33 at ¶ 73]

To establish a *prima facie* case of tortious interference with contractual relations, Defendants must demonstrate that (1) a valid and enforceable contract existed between the

13

Defendants and another party; (2) the Mahers were aware of the contractual relationship; (3) the Mahers intentionally and unjustifiably induced a breach of the contract; (4) the Mahers' inducement caused the other party to breach the contract; and (5) the breach of contract damaged the Defendants. *See Williams v. Shell Oil Co.,* 18 F.3d 396, 402 (7th Cir. 1994).

Here, Defendants have not and cannot present a single piece of evidence to demonstrate that the Mahers intentionally and unjustifiably induced a breach of the contract, let alone that the Mahers' inducement caused ACD to breach its contract with the Defendants. In his deposition, Rowen admitted that neither Bob Jr. nor any ACD employee made any statements to Rowen that the Mahers induced Bob Jr. to cause ACD to intentionally not sell Playroom's products. MF at ¶¶ 77, 78. Nobody has informed Rowen that the Mahers induced Bob Jr. to cause ACD not to sell Playroom products. MF at ¶ 79. Indeed, the Mahers have declared that they did not induce Bob Jr. to cause ACD not to sell Playroom's products. MF at ¶ 76. Defendants provide no evidence for this Court to reasonably infer that the Mahers intentionally and unjustifiably induced a breach of ACD's Exclusive Distribution Agreement with Defendants. Defendants' sole evidence in support of Count IV of their counterclaim is Rowen's belief "that ACD has not put their best efforts in selling and marketing Playroom products." MF at ¶ 80. Thus, summary judgment on Count IV of Defendants' Amended Counterclaim is proper.

## CONCLUSION

For each of the foregoing reasons and those set forth in the Mahers' motion, Robert P. Maher and Marilyn V. Maher respectfully request summary judgment be entered in their favor and against The Rowen Group, Inc., d/b/a Playroom Entertainment and Daniel M.J. Rowen on Counts I and II of their Complaint adjudging that Defendants are jointly and severally liable for the principal sum of $265,693.24 plus accrued and unpaid interest, and attorneys' fees and costs incurred by Plaintiffs in bringing this action, and dismissing Counts III and IV of Defendants'

Amended Counterclaim with prejudice and with an award to Plaintiffs of their attorneys' fees and costs incurred in defending against those claims, and for such further relief as this Court deems just and appropriate.

Dated:  February 4, 2014

Respectfully submitted,

ROBERT P. MAHER and MARILYN V. MAHER, individuals,

By:  */s/ Leonard S. Shifflett*
      One of Their Attorneys

Leonard S. Shifflett, Esq. (ARDC #2587432)
leonard.shifflett@quarles.com
Christopher J. Zdarsky (ARDC #6304382)
christopher.zdarsky@quarles.com
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL  60654
Telephone:  (312) 715-5000
Facsimile:  (312) 715-5155

QB\24864340.1